Good morning, Your Honors. Mark Rosenbusch, appearing for Mr. Choudhry. My associate, Tim Finnegan, is here with me this morning. The trial court in this matter found that it didn't have to resolve the issue of whether the police had authority to detain or arrest solely for a parking violation because the court felt that the standard for determining reasonable cause for detention requires that one look at a totality of the circumstances. And I think that's problematic here because I don't think the rule is problematic or the application of the rule is problematic because I think that to look at the totality of the circumstances, one can look at what the police officers. I thought Wren is real simple. Even if it's civil, if it's a traffic or parking violation, good enough. They can stop a person. And here, the judge said there are four things. He was parked in a towing zone. It was a neighborhood where there was a lot of drug and prostitution and activity of that sort. He saw rapid movement in the car that he thought he claimed it might be compelled sex. And there was a fourth thing. I can't remember what it was. Why wasn't – and it's just – at that point, it's just for a stop. Or I guess the fourth thing was flight. It's just a stop. All it is is going up to the car and taking a look. First thing, Your Honors, I don't think that Wren says that civil traffic infractions always permit an arrest or detention. But it did use the word civil. It did, but that was dicta. In fact, in Wren, that was a drug case in the South. Even dicta, when it's the United States Supreme Court, we tend to take it seriously. Yes. But the holding was the officers had probable cause to believe that the Petitioners violated the traffic code. Specifically, the traffic violations involved there was a wrong – was a turn without signaling and unreasonable speed. So it's very clear there that there were traffic violations involved. And the State laws – Well, a moving violation. You're saying that it was not civil in that particular state. It was criminal? Yes. And as a matter of fact, that was D.C. One of the offenses involved was Municipal Code 2200, which is punishable by up to 90 days in jail. But it is a civil wrong that the police have the responsibility to enforce. That's true, isn't it? Yes. So the regular theories about police protecting themselves and being able to conduct a search and so on would be applicable, wouldn't it? Well, the California statutory scheme, Your Honor, with respect to parking violations, is the – there's an enabling statute in the Vehicle Code which permits municipalities to develop parking codes that have civil penalties. And those municipal codes are specifically exempted from treatment as criminal offenses. 32 of the San Francisco Municipal Police Code is such an offense. So in – Well, they're still part of the traffic code, and it gives the cities and counties authority to enforce the parking codes. And here, the San Francisco Municipal Code gives the police the authority to enforce the parking law. Yes. But the California Vehicle Code says how municipal parking violations are punishable. No. All it says is the remedy that's going to – that California and many other States have decided that you don't need all the elaborate criminal procedures to enforce traffic citations. They've opted for an administrative mechanism for collecting fines and enforcing fines and whatnot. That's right. And one of the promulgated rules in the Vehicle Code is, for example, in a parking violation of the municipal codes, if a car is unattended, you leave the ticket on it. If a person comes and drives away, you don't arrest them. You have the license plate number, and you mail the registered owner of the vehicle. But the – What does it matter? I mean, the idea is, if there's a traffic violation, the idea is to control when police can bother you and when they just have to let you go around your – go about your business unmolested. And if it's a traffic violation, whether it's civil or criminal, whether you get a ticket or a summons or you have to go to court or they arrest you, whatever it is, they can stop you and interfere with you. Well, I think there is an important difference, and the difference relates to our privacy rights. And the difference relates to when the Fourth Amendment should apply to protect people. When there are criminal violations at issue where a person can be detained or arrested, the Fourth Amendment comes into play to protect us. When there are civil violations that don't lead to an arrest, it means that the police should not have the power to use a warrant. Wait. Until the lady who was driving – until the lady who was driving turned out not to have a valid license and registration, they were fine. I agree. And that – the police found that out after the detention occurred here. The detention occurred, and they discovered about her warrants after this set of facts. They come up onto Bernal Heights Boulevard there. They see a car parked in an area that they know is essentially a lover's lane, amongst other things. In a no-parking zone. It's in a – that's right. Between 10 and after 10 and whatever. It's in a total zone. It's dark. They can't tell if there's anybody in the car. They flash their beam on the car, and they see hurried movement. Like anybody else, people in the car are startled. I thought this was not just a place where teenagers go to park. I thought it was a bad neighborhood where there's a lot of drugs and prostitution. I'll address that in a moment. After putting the light on and seeing the hurried movement of whoever it is sitting up, they immediately put their overhead lights on, which by California law is a detention because you legally cannot leave. So those are the circumstances that led to the detention. In terms of the – whether or not that was a high-crime area, there was no – I believe there was no competent evidence of that. There was evidence, but you don't think it was competent. Well, I don't think there was enough of it to satisfy the law. Sandoval, for example, says that war stories aren't enough. Here you had nothing but the conclusion of the police officers. There was no testimony. I don't get why that's a problem. I mean, I walk to the courthouse in the morning from my hotel in the Union Square area. I know perfectly well when I'm into the high-crime area. Anybody does. Well, the cases say that the court needs to have specific facts. Do I need a sociologist to tell me that once I get east of – once I get to the 6th Street area, I've entered a high-crime area? Well, the cases say that you need more than a conclusion because we don't know, except through the officer's testimony, whether this is a high-crime area or not. When you're walking down 6th Street, you are observing a lot of facts, and you have specific experiences and knowledge that leads you to that conclusion. The court needs to know those things to make that determination here. And all the court had was a conclusory statement by the officer. We wish to challenge it. We were not given an evidentiary hearing. And the court even articulated its belief that it was not an objective standard that needed to be applied, but that the subjective statement of the officers was enough to satisfy her. And that's wrong under the law. Is there some California law about stopping a person who's committing one of these traffic violations that's civil? That is to say, can the police officer stop the person and give them the ticket? And is that permissible, or is there any California law about that? The law that we cited, I think it was 4020 of the Vehicle Code, says specifically with respect to the parking violation in a towway zone that we're talking about here under the Municipal Code, what the officers do is if there is a person present and the person leaves, they are directed by the statute not to make an effort to mail the ticket to the registered owner. So that is under California law what is required. And that's why we're contending this was not a criminal offense. You're saying that they don't, the police don't even have the authority to stop someone under, you know, not an arrest, but just an inquiry, stop inquiry, and they don't even have the authority to do that? For a parking ticket, that's correct, under 32 of the Municipal Code. But taking your little factual scenario, the way you laid this all out, when the officers came upon Bernal Heights, the road, and saw the car parked in this towway zone after 10 o'clock, there was probable cause to believe that a parking violation had occurred. Yes. So they had a right to put a ticket on the car? They had a right. That meant that they had a right to investigate that parking violation. And it's quite clear that under the Municipal Code of San Francisco that they have the authority to issue parking tickets. And the Vehicle Code also gives the cities and counties the authority to hire little parking, civilian parking-type people who go around in little white cars and issue parking citations. But the police have the same authority as well. But the only thing that happens is once the cop, once the police enforce that traffic violation, that parking violation, the penalty is different. It's a civil fine that can be enforced through the licensing mechanism and car registration mechanism. The Vehicle Code scheme does not make this a criminal offense for which powers of arrest come into play. It specifically says they don't come into play. What does arrest matter? I mean, if all they have a right to do is walk over to the car and put a ticket under the windshield wiper, that would mean they have a right to go up to the car and put a ticket under the windshield wiper. Now, I would think that if it's nighttime, they could do it with a flashlight. And I would think that if the driver says, whoa, I don't want to get a ticket, and he pulls out of there fast and starts driving away, the cop could say, you don't get out of a ticket that easily, and go and catch him and put a ticket under his windshield wiper. Well, the Vehicle Code addresses that. The California Vehicle Code addresses that and indicates that if a person appears and moves the vehicle, what the officer is to do, in my recollection, is the language of that section is shall mail the ticket to the registered owner. So that is by California law what the officer is supposed to do under those circumstances. Basically, what we're saying is the totality of the circumstances test, Your Honor, should run both ways. If you're going to look beyond merely the parking violation as the basis for the stop, then the fact that when a spotlight is put on the occupants of the car under these circumstances and they're startled, that's not a hurried movement. That's indicative of criminal activity. What was it that led the California legislature to repeal the criminal traffic code for, you know, parking violations? In most States, this is a, quote, criminal offense. What led them to do that? Do you know? Well, not beyond the legislative history that we quoted in our briefs, which basically said there was a legislative determination by the California legislature that these offenses were too minor to be dealt with by criminal procedures. And that was the legislature's determination, which we're all bound to follow. But they didn't say police officers couldn't enforce traffic tickets. They did promulgate a --- Or parking tickets. Yeah. They did promulgate a specific section that tells law enforcement officers what to do when they're enforcing municipal police codes. No, but that misses my ---- that's beyond the mark, which is that they can't ---- the police can issue a parking citation. Absolutely. And as Judge Kleinfeld said, that must mean that they can, when they see a car parked in a spot like this, they can go up and investigate it. Yes. And but what I'm arguing on is ---- They can put their flashlight on. Yes. I think that's right. They can even put on their headlights, you know, just to let everybody know that they're around. Well, but there's a legal effect. When they put on the light bar, that's a detention, because under California law, at that point, you cannot leave. So what I'm saying is, under the totality of the circumstances, once a light is put on people under these circumstances, hurried movements are no more indicative of innocent activity, oh, the police are here, or who's shining that light at me, than they are of criminal behavior. Similarly, if you're in a tow-away zone, and the light goes on, pulling out of the tow-away zone isn't any more indicative of other criminal activity than wanting to get your car out of the tow-away zone. So I think, you know, looking at the totality of the circumstances really should cut both ways. Thank you. Thank you, counsel. May it please the Court. My name is Derek Owens, and I represent the United States. I would like to address the issues of the reasonable suspicion for the stop, as well as the investigative stop for the parking violation. Judge Hamilton did not err in ruling that, based on totality of the circumstances, there was reasonable suspicion to stop the vehicle. The district court, Judge Hamilton found, and I'll quote, so we have not only the gestures, movements observed by the officers, and the officers' knowledge of the area, four factors. You addressed the issue of the actual flight of the vehicle, and the detention. The detention wasn't actually when the lights of the patrol vehicle went on. The detention of the Terry line of cases is actually when the show of authority was when the lights of the vehicle went on. Was it the spotlight, or was it the lights up on top? The red lights went on. So the spotlight, what was the spotlight? The spotlight was basically to illuminate the vehicle after they saw it was legally parked. That's not a show of authority. That's not a show of authority. That's an investigative tool to see if there are occupants of this vehicle. At that time, they couldn't tell if there was anyone in the vehicle. And that's when they saw the hurried movements, based on that light. But after they saw the movements in the car, they then turned on their bar lights, and that's the stop. That is not the stop. That's not the stop? When the bar lights go on, that's basically announcing their presence. However, the vehicle attempted to flee after that. And once that vehicle actually stops and they yield to that show of authority under the Terry line of cases, that's when the stop is. Similar to when somebody sees an officer, an officer says, stop police, they run. The seizure doesn't take place until the... They actually apprehend them? Exactly. Is that right? Yes, that's correct, Your Honor. I would think that if the police say, stop, you better stop. Yeah, I think the Supreme Court has held otherwise. Okay. And also, a case that we cited in our brief, People v. Hart. That's the California case that addresses the parking violation in that case. It was a 1999 case where somebody was cited for illegal parking. In that case, they were cited under the vehicle code. And the penalty for that, the maximum penalty that they can get for that, is also a civil penalty. Like in this case, Section 32 of the municipal code, and I'll stress it's the traffic section of the municipal code, says that there is a civil penalty for that as well. And the language of Section 32 talks about any person violating any of the class of resolutions now or here and after in effect, which are referred to in the following subsections of this section, shall be guilty of an infraction. And upon conviction, shall be subject to the penalties provided in that particular section. In this particular section, prohibiting parking on any street or alley in San Francisco, it's a fine of not less than $20 or more than $100. So in that case, People v. Hart, where they actually said an officer may detain and cite a person for violating the vehicle code, the maximum penalty there was a civil penalty. Here, it's a civil penalty as well. And based on that case, there was a right for the officers to stop, detain, in order to issue a citation. Let me ask you something about the neighborhood. My first impression when I started reading the case was police were just amusing themselves by rousting teenage kids who were parking. But then my second impression was this is a bad neighborhood, and they think this is the kind of place where crime will be afoot. What was the evidence for the bad neighborhood? Well, what we have is the declaration of the officer and his knowledge of the area when they patrolled the area that night. It's essentially one street that leads up to a park in Bernal Heights in the hills. Sorry, your voice keeps trailing off at the end of the sentence, so I miss the end of each sentence. I apologize, Your Honor. The knowledge of the officer that evening was based on his experience in the area. Just show me the words they need. In his declaration, which is at excerpt number 22, pages 1 through 4. Got it. In the words that the officer uses in this declaration, starting at page 1, line 27, This similar language was used in his report, which is also part of the excerpts of record, excerpt number 18. Sexual activities and alcohol are legal. Well, certain sexual activities are. He cites consensual or non-consensual activities. That's what I said. Sorry. That's right. Those are not legal. And the narcotics, the use of narcotics clearly is not illegal. And consumption of alcohol in public, sometimes legal, sometimes not. And the suspicious movements that they saw, the hurried movements, I think aligned with what they thought might be going on. I thought it was a good neighborhood. I would think it was teenagers getting dressed fast. That could be the case, Your Honor. And in that case, They could just be startled. They could be startled. Well, you know. But as the Supreme Court has held, innocent explanations for one of each of these factors that Judge Hamilton cited below is not how the courts are supposed to interpret it. They're supposed to incorporate the totality of the circumstances when considering reasonable suspicion. And I think that's what Judge Hamilton did when she looked at those hurried movements or gestures when the high beam was up. Isn't the parking violation just enough? I think the parking violation is enough. I think that is enough to make an investigation a brief investigation of the vehicle and to raise Well, they observed a parking violation. It wasn't even reasonable. It wasn't even they didn't have there was a clear parking violation. It was after 10 o'clock parked in a no parking in an improper parking zone. That's correct, Your Honor. Isn't that correct? And they could have stopped solely on that. The district court didn't rule on that. Judge Hamilton ruled on the reasonable suspicion of it. In our brief, we cite that either one is fine. The police had authority to make a brief investigative stop under either theory. But there's not much case law on the civil side of, is that right? You know, there's not a lot of case law on this. Other districts have done more on it, but there hasn't been a lot. People v. Hart, I think, is the main case. That's in California, though. That's a California case. It's a California case interpreting that California vehicle code. So with that, I would ask that you affirm the decision of the district court, if there's nothing else. Thank you. Stick around for just a second. I might. Could you respond to the argument your adversary made that if the police observe a parking violation and the person moves out? I imagine that happens all the time. You see a cop going down the street giving tickets to the people who've been there more than two hours, and you say, uh-oh, I'm about to get a ticket. You trot over to your car and pull out before he tickets you. And the lawsuit, according to your adversary, is they cannot give chase. All they can do is write down the license plate number and mail a ticket. What application does that have to this situation where the car is parked in a no-parking tow-way zone? Well, I think that's an interesting question. I think that statute, that was actually addressed in Hart. In that case, the vehicle did not drive away. So Hart, the court said, that that statute addresses if the car does drive away, but it doesn't address the situation if it does not drive away. In this case, interpret the lawsuit as if the vehicle did not drive away. I missed some words. I don't know. I lost part of what you said. I apologize. The Hart court addressed if the vehicle does not drive away, that that statute is silent to it. And this vehicle actually never did completely drive away because the officer was able to detain it before it did. However, that statute is a little ambiguous, as counsel described it. It doesn't actually say law enforcement officer or peace officer must shale, or shale, mail them a ticket. It says the issuing officer. And I think that statute actually encompasses all officers that might be writing a parking ticket. I think Judge Pai has referenced someone who, in those little carts that issue tickets as well, I think they're actually considered an issuing officer as well. And they're not justified in making a stop of a vehicle based on a perceived traffic violation. They write their citations. And if they're in the middle of writing a citation, the car speeds off, they're instructed to just mail it to them. However, in this case, it's a little different. These were law enforcement officers, not just issuing officers in a small cart. And the vehicle that they were going to cite had not begun to write a citation as of yet. They had just gotten out of the car, and the car began to fled. And attached to that also in the appellant's brief, he mentions a code that that vehicle also violated, which is a misdemeanor, which is evading officers. After the lights of the vehicle had already been illuminated, they were not able to, or they weren't free to take off from a police vehicle that had their red lights illuminated. That's essentially a violation of the vehicle code 2800.1, evading a police officer. Roberts. Thank you, counsel. Thank you. Counsel, you ran through your time, but why don't you take 30 seconds anyway, in case you have some rebuttal? What I'd like to spend my 30 seconds on is part. It's clearly a distinguishable case. It's a California case. The violation in that case is parking or driving on a sidewalk, and it was a California vehicle code, a California vehicle code traffic violation, California Vehicle Code Section 22500. It specifically was not a municipal police code violation, exempted from enforcement as a criminal offense under Vehicle Code Section 4203.5. The holding in that case was, I quote, the encounter between Deputy Bricker and the defendant was justified by the defendant's vehicle code violation. Counsel, let me ask you this. The officers have just a regular right as a citizen to approach someone and begin to say something to you, and they, in part, that's what they were doing here, right? Well, they did more than that, Your Honor, I believe, because what they did, after seeing the parked car, it was dark, it was at night, they didn't see any movement, they put their spotlight on it, and they saw a hurrying movement. At that point, I contend, they made a detention. They put on their light bar, and that's a detention at that point. If they had chosen to do something else, we would have a different set of circumstances. Did they get out of the car and walk over there then? Did they walk over to the other car from the police car? After they issued the order detaining these people, yes, they did. I mean, you say the turning on of the light on top of the car is an automatic detention? Yes, because under California law, you can't leave that. The officers have ordered you to remain. If they had done what Your Honor suggested, it may have been legal under the Fourth Amendment. They made an arrest when they – under California law, when they turn on the light, that's an arrest. You're detained because you can't leave. And they could have done a different thing. They could have walked up with a phone. They did leave. I mean, if you say stop thief and the guy doesn't stop, you haven't stopped him yet. Well, they – she slowly backed the car out of the parking space, and as the officers walked up and said stop, she stopped. That's what happened. So this wasn't a flight. She didn't tromp on the gas pedal and zoom off into the distance. She started backing out of the tow-away zone. And as the officers walked up at that point and said, would you please stop, she stopped. The spotlight didn't – so then when he initially turned on the spotlight, that wasn't – what was that? Did that count for anything, just investigation? Yeah. I think that's investigation. That's all that's just investigation, is the – is the – your account. Yes. And I don't think that violated the Fourth Amendment. That's okay. They turned on the spotlight, which is fine. Yeah. And if the officers had chosen to get out of their car, walk up with their flashlights to the vehicle and take a look that way, as His Honor suggested, I think that would have been fine. But they didn't. Before they had reasonable suspicion, they detained. They gave an order. You may not leave. And – and under the totality of the circumstances, which I believe should be looked at in both ways, not only factors pointing towards criminal behavior, but factors that are completely consistent with innocence, the totality of the circumstances showed two young people in a dark area together in a car and – and with – I believe, Your Honor, without showing – without a showing in court that this was – this was a high-crime area. And an officer can't violate People's Fourth Amendment rights under those circumstances. Otherwise, we run into a situation where reasonable suspicion begins to become used as a catchphrase for just destroying people's privacy rights. If the officers can come up with any articulable – anything that they can say, it doesn't even have to be reasonable, because I don't think there were reasonable circumstances here. If some reasons can – they can come up with some reasons, then people's privacy rights disappear. So I think there has to be a realistic, balanced view of what's real suspicion of a crime and what is not. Thank you, Counsel. Thank you. And Joseph v. Household Finance, Wolf v. Searcy are submitted. United States v. Choudry is submitted. Pouches v. Philip Morris was deferred. And that concludes today's calendar. We're adjourned for the day.
judges: Merritt, Kleinfeld, Paez